# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**ERIC L. WASHINGTON,**

     **Plaintiff,**

**vs.**                                  **Case No.  4:17cv382-CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner
of the Social Security Administration,[1]**

     **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

This Social Security case was referred to the undersigned upon

consent of the parties by United States District Robert L. Hinkle.  ECF Nos.

7, 9.  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of

the final determination of the Deputy Commissioner for Operations

(Commissioner) of the Social Security Administration denying Plaintiff's

application for a period of disability and Disability Insurance Benefits

pursuant to Title II of the Social Security Act and Supplemental Security

---

[1] Nancy A. Berryhill, former Acting Commissioner, currently leads the Social Security Administration as Deputy Commissioner for Operations pending the confirmation of a Commissioner.  *See* https://www.ssa.gov/agency/ commissioner.html (last visited April 16, 2018).  Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the Defendant.

Income pursuant to Title XVI of the Social Security Act.  *See* ECF No. 1.

After careful consideration of the record, the decision of the Commissioner

is affirmed.

## I. Procedural History and Facts

On October 29, 2012, Plaintiff filed an application with the Social

Security Administration for a period of disability and Disability Insurance

Benefits (DIB) pursuant to Title II of the Social Security Act and

Supplemental Security Income (SSI) pursuant to Title XVI of the Social

Security Act.  The applications alleged disability beginning October 15,

2010, based on alleged nerve damage in his right arm and recurrent

infections in his left arm.  Tr. 326-36.[2]  That alleged onset date was later

amended to September 30, 2014.  Tr. 90.  Plaintiff's applications were

denied initially and on reconsideration.  Tr. 112, 123.

A hearing was commenced before Administrative Law Judge (ALJ)

Marni R. McCaghren on February 6, 2014, but was continued.  Tr. 46-54.

The hearing was recommenced on August 27, 2014, Tr. 55-86, and

resulted in a decision on November 17, 2014, denying disability insurance

benefits and supplemental security income.  Tr. 137-44.

---

[2] Citations to the transcript/administrative record (ECF No. 11) shall be by the symbol "Tr." followed by a page number that appears in the lower right corner of each page.

On April 29, 2016, the Appeals Council vacated the decision and remanded the case to the ALJ to consider Plaintiff's examination findings that indicate greater manipulative limitations than those found in the residual functional capacity determination of the ALJ.  Tr. 150.  On remand, a hearing was held before ALJ Marni R. McCaghren on October 19, 2016. Tr. 87-108.  A decision was rendered December 22, 2016, denying DIB and SSI, Tr. 30-45, and the Appeals Council denied review on June 29, 2017. Tr. 1-7.

Accordingly, on August 28, 2017, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.  Respondent filed an answer on November 7, 2017, ECF No. 10, and both parties filed memoranda in support of their positions.  ECF Nos. 15, 16.

## A.  The Hearing

Plaintiff appeared at the hearing, with Byron Lassiter, his counsel. Independent vocational expert Eric Anderson also appeared.[3]  Tr. 87-108. At the beginning of the hearing, Plaintiff's counsel advised the ALJ that Plaintiff had developed problems with his legs and swelling in his knee, as

---

[3] A different vocational expert testified in the earlier hearing held prior to the Appeals Council remand.

well as problems with his left elbow. Tr. 90.  The alleged onset date was
amended to September 30, 2014, with the notation that Plaintiff was
claiming steady deterioration.  *Id.*

Plaintiff, age 39 on the date of the hearing, testified that he has a
ninth-grade education, has not received a GED, and is right-handed.
Tr. 92.  He lives at his mother's house and has not worked since
September 2014.  Tr. 92-93.  His past work included stripping and waxing
floors, construction, general labor, changing tires, and some cooking jobs.
He also worked unloading heavy stock, driving heavy equipment, and
delivery from 2011-2012.  Tr. 93-94.

Plaintiff testified that he cannot work because he has knee and elbow
pain, and nerve damage in his right hand that prohibits his use of it even for
tasks of daily living.  Tr. 96-97.  The nerve damage causes numbness,
burning, stinging, and throbbing.  Tr. 97.  He testified that in 2014, he was
able to open a door lever and open his car door with his right hand, but he
can no longer do those things.  Tr. 97-98.  He can push with his right hand,
but not grasp.  Tr. 98.  He has pain in his left elbow and his fingers cramp
up a lot, with deterioration starting in his thumb area.  Tr. 99.  He testified
he has arthritis in his knees, causing him inability to stand for a long time or

walk more than 20 or 30 minutes.  *Id.*  He takes pain medication but it
makes him tired.  Tr. 100.

A typical day involves him getting up around 9 or 9:30 a.m., taking
pain medications, having a hot shower, and walking for 20 or 30 minutes.
*Id.*  He tries to elevate his knee for a few hours.  He is not involved in
church or any community service work.  *Id.*  His mother helps him with
dressing and cooking.  Tr. 96.  He cannot open bottles or cans.  Tr. 97.
Plaintiff testified on questioning that he had not been advised to do any
physical therapy and would need to know the outcome of the disability
hearing before that issue was decided, due possibly to insurance issues.
Tr. 106.

Eric Anderson, impartial vocational expert, testified that Plaintiff's past
work falls in the category of *stock clerk*, DOT code 222.387-058, heavy,
semi-skilled, SVP of 4; *janitor*, DOT code 381.687-018, medium, unskilled,
SVP of 2; *short order cook*, DOT code 313.374-014, light, semi-skilled,
SVP of 3; *construction worker*, DOT code 869.664-014, heavy, semi-
skilled, SVP of 4; and *tire changer*, DOT code 915.684-010, heavy, semi-
skilled, SVP of 3.[4]  Tr. 101.

---

[4] DOT refers to the Dictionary of Occupational Titles (4th Ed., Rev. 1991), which
is one of the examples of sources that the ALJ may rely on for job information.  *See*
SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or
other specialist.  *See* § 404.1566(e).  "[SVP] is defined as the amount of lapsed time

The ALJ posed a hypothetical question to the vocational expert, asking him to assume an individual of the same age, education, and work experience as Plaintiff, who was limited to: lifting and carrying 20 pounds occasionally and 10 pounds frequently; could stand or walk for six hours per eight-hour workday and sit for six hours with customary breaks; should not perform pushing and pulling or arm, leg, or foot controls; should not climb ladders, ropes, scaffolds, or stairs; should not crouch, kneel, or crawl; could perform no handling with the right-dominant hand, no feeling, or fingering except for occasional use of the thumb; and should avoid operation of vibratory equipment. Tr. 102. The vocational expert was asked if this individual would be capable of Plaintiff's past work, to which the vocational expert answered that he would not. Tr. 102.

When asked if there were other jobs that the individual could do, the vocational expert testified there were "[v]ery few," but the individual could perform the representative jobs of *surveillance system monitor*, DOT code

---

required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702. An SVP of 3 allows for preparation time of "[o]ver 1 month up to and including 3 months" and an SVP of 4 allows for "over 3 months up to and including 6 months." *Id.* Semi-skilled work is work that needs some skills but does not require doing the more complex work duties. 20 C.F.R. § 404.1568(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

379.367-010, sedentary, unskilled, SVP of 2, for which there are 114,000

jobs in the national economy; *information clerk*, DOT code 237.367-022,

sedentary, SVP of 2, for which there are 110,000 jobs in the national

economy;[5] and *bakery worker*, DOT code 524.687-022, light, unskilled,

SVP of 2, for which there are 130,000 jobs in the national economy.

Tr. 103.  He testified that the job of information clerk does not typically

require computer or keyboard use, but was more a matter of providing

information on where to go.  Tr. 105.  He said the job of surveillance

system monitor would not require more than occasional bilateral manual

dexterity.  Tr. 106.

The ALJ posed a second hypothetical with the same restrictions as

previously stated with the additional limitations of deficits in pace due to

need to use the non-dominant hand, and the preclusion of writing or fine

manipulation.  *Id.*  The vocational expert testified that this individual could

still perform the listed occupations.  *Id.*

In a third hypothetical, the ALJ added the limitations of lifting and

carrying ten pounds only occasionally, standing and walking only two hours

per workday, and sitting for six hours with customary breaks.  Tr. 104.  The

---

[5] As discussed *infra*, the job of information clerk is actually described as SVP of 4, which would fall into the semi-skilled category.  *See* DOT code 237.367-022, 1991 WL 672188.

vocational expert testified that such an individual would still be capable of performing the listed sedentary jobs. *Id.* The vocational expert added the representative job of *call-out operator*, DOT code 237.367-014, sedentary, unskilled, SVP of 2, for which there are 62,000 jobs in the national economy. *Id.* The job of call-out operator might have a computer component requiring occasional bilateral use of hands. Tr. 106.

The ALJ posed a fourth and final hypothetical in which the above-described individual would be off task, or work at an unproductive pace, frequently throughout the day. *Id.* The vocational expert testified that there would be no work for such an individual in the national economy. *Id.* The vocational expert testified that his testimony was consistent with the DOT, but explained that his testimony regarding the dominant hand/non-dominant hand and off-task behavior was based on his education, training, and experience in vocational rehabilitation over the past 28 years. Tr. 105.

### B. The Decision of the Administrative Law Judge

In the decision issued on December 22, 2016, the ALJ made several findings pertinent to this review. Tr.32-39. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. Tr. 33. He was 33 years old, defined as a younger

individual age 18-44, on the alleged disability onset date. Tr. 37. Plaintiff has a limited education and is able to communicate in English. *Id.*

The ALJ found Plaintiff did not engage in substantial gainful activity during the period from his alleged amended onset date of September 30, 2014. Tr. 33. The ALJ found that Plaintiff had the following severe impairments: degenerative changes of the left elbow with recurrent elbow pain, swelling, and infection; right upper extremity muscle wasting and finger contractions with "Hand of Benedict"; and arthroplasty, polyneuropathy, cervicalgia, and cervical spine spondylosis. Tr. 33. Based on his severe impairments documented by the medical evidence and the evidence presented at the hearing, the ALJ concluded that Plaintiff cannot perform his past work. Tr. 37.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ found, in pertinent part, that the severe impairment of Plaintiff's elbow does not meet the requirements of gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or

ankylosis, resulting in inability to perform fine and gross movements effectively, as required by Listing 1.02B.  Tr. 33.  The ALJ found that the record did not indicate that Plaintiff has an extreme loss of function, that he has good use of his non-dominant hand, and can perform hygiene independently and can drive.  Tr. 34.

As for Plaintiff's right upper extremity impairment, the ALJ found that Plaintiff's right hand and arm impairment does not meet the requirements of Listing 1.05 in that Plaintiff has had no amputation and retains the limited use of the right upper extremity.  *Id.*  The ALJ found that Plaintiff's peripheral neuropathy/arthropathy does not meet Medical Listing 11.14 because it does not cause disorganization of motor function as required by Medical Listing 11.04B.  *Id.*  As for Plaintiff's severe impairment of cervical degenerative disc disease and related spinal problems, Listing 1.04 requires, in pertinent part, a disorder of the spine resulting in compromise of the nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.  The ALJ found that the record did not support these findings.  Tr. 34.

In determining Plaintiff's residual functional capacity (RFC),[6] the ALJ found that Plaintiff has the capacity to perform a reduced range of sedentary work in that he can lift and carry up to 10 pounds occasionally. He can stand/walk for up to two hours in an eight-hour workday and sit for up to six hours in an eight-hour day. Tr. 34. The ALJ found that Plaintiff should not perform pushing or pulling of arm, leg, or foot controls; cannot climb ladders, ropes, scaffolds, or stairs. He should not crouch, kneel, or crawl; and he cannot handle, feel, or finger with the right dominant hand except he can occasionally use his right thumb. The ALJ found as part of the RFC that Plaintiff can only occasionally write or perform fine manipulation with his left hand, but can constantly perform handling, grasping, and feeling with his left hand; and he should not operate handheld vibratory equipment. *Id.*

---

[6] Residual functional capacity is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his or her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

In reaching this RFC determination, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause "some of the alleged symptoms," Plaintiff's statements concerning the intensity, persistence, and limited effects of the symptoms are not entirely consistent with medical evidence and other evidence in the record.  Tr. 35.  The ALJ cited Plaintiff's claims that he cannot work due to knee and elbow pain and problems in his right hand, all requiring him to take medication daily.  *Id.*  The ALJ referred to testimony from the earlier hearing that he could not write with his right hand and could not grasp, make a fist, pick up things, or open doors with that hand.  He testified at that hearing that he had little strength in his left elbow.  *Id.*  The ALJ also cited Plaintiff's more recent testimony that he could not stand for long periods due to knee pain and could only walk for 20 to 30 minutes.  *Id.*

Concerning Plaintiff's left elbow symptoms, the ALJ recognized that medical records documented degenerative changes in his elbow and that he has required debridement and irrigation for left elbow cellulitis.  *Id.* Radiographic imaging of the elbow revealed extensive soft tissue swelling that suggested calcific olecranon bursitis or possibly gout.  Tr. 36 (citing records at Tr. 447, 444).  Imaging also revealed possible multiple soft tissue abscess use and/or cellulitis.  *Id.*  The ALJ concluded that even with

the severe impairments of his left elbow, objective findings of consultative examiner Zakiya Douglas, M.D., show that he had a good range of motion in the elbow and no pain was elicited.  Tr. 36 (citing records at Tr. 483).

As to Plaintiff's right upper extremity severe impairments, the ALJ found that he has muscle wasting and finger contractions with "Hand of Benedict," that contributes to his functional limitations.  Tr. 36.  The ALJ cited medical records of Plaintiff's March 22, 2013, visit to Franklin Primary health center that show Plaintiff has right upper extremity muscle wasting, severe to hand, and hand deformity.  Tr. 36 (citing records at Tr. 487).  The ALJ further noted that records consistently show Plaintiff has muscle wasting and limited range of motion in his right upper extremity.  *Id.* (citing records at Tr. 578-91; 604, 609).  The ALJ noted the consultative examiner's opinion that Plaintiff has a "significant disability of his upper right extremity" in office notes stating that Plaintiff has significant muscle wasting in his right hand and forearm, and in the fine muscles and fingers of his hand.  Tr. 36 (citing records at Tr. 483-84).  Dr. Douglas also stated in his office notes that Plaintiff is unable to grip and hold objects securely by the last three digits of his right hand, cannot manipulate both large and small objects with the first three digits, and his thumb opposition function is

completely gone.  Tr. 483.  There is evidence of spasticity and Plaintiff's sensation to pin prick is abnormal in the ring finger and little finger.  *Id.*

Based on this medical evidence, the ALJ concluded that Plaintiff has substantial functional restrictions due to his degenerative changes and pain in his left elbow; his right upper extremity muscle wasting and finger contractions; and his arthroplasty, polyneuropathy, cervicalgia, and cervical spine spondylosis.  Tr. 36.  The ALJ concluded, based on the medical evidence and other evidence, that the functional restrictions can be addressed by the RFC limitations set forth above, which the ALJ opined would accommodate Plaintiff's severe impairments and allow for the performance of a significant number of jobs in the national economy.  Tr. 36-37.

Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that there are jobs in significant numbers in the national economy that Plaintiff can perform, which the ALJ found allow for all the limitations contained in the RFC.[7]  Tr. 37.  Those jobs were identified as *call-out operator*, *surveillance systems monitor*, and

---

[7] Because Plaintiff was found not disabled, the ALJ concluded that transferability of job skills is not material to the analysis.  Tr. 37

*information clerk*, as described and testified to by the vocational expert at the hearing. *See supra*, at 6-8; Tr. 103-06.

In conclusion, the ALJ found, based on the testimony of the vocational expert and the record, that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that Plaintiff was "not disabled" under section 216(i) and 223(d) of the Social Security Act from September 30, 2014, through the date of the decision, December 22, 2016. Tr. 38-39.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[8]  The Court may not decide the facts anew, reweigh the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

---

[8] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to
those parts of the record which support the ALJ.  A reviewing court must view the entire
record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.' " Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509

(duration requirement).[9]  Both the "impairment" and the "inability" must be

expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212

(2002).  An individual is entitled to disability insurance benefits if he or she

is under a disability prior to the expiration of his insured status.  *See* 42

U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211; Torres v. Sec'y of Health

& Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v.

Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v), the Commissioner

analyzes a claim in five steps.  Under the first step, the claimant has the

burden to show that he is not currently engaged in substantial gainful

activity.  20 C.F.R. § 404.1520(a)(4)(i).  At the second step, the claimant

must show he has a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).

---

[9] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations herein should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Step two is a threshold inquiry, and the ALJ does not go on to step three if the claimant fails to meet step two, but will find claimant is "not disabled." McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the claimant must show that his severe impairment or combination of impairments meets or equals the criteria in the Listings of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant cannot meet or equal one of the listings, the ALJ considers at step four whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  § 404.1520(a)(4)(iv).  If the claimant establishes he cannot perform his past relevant work, the burden shifts to the Commissioner at step five to show that significant numbers of jobs exist in the national economy that the claimant can perform in light of his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(d), (g); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); McMahon v. Comm'r, Soc. Admin., 583 F. App'x 886, 887 (11th Cir. 2014) (unpublished).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled and, consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished). The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(c)(2).[10] "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053. (11th Cir. 1986).

The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the

---

[10] This provision applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." For claims filed after that date, the applicable provision is 20 C.F.R. § 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."

evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.

Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; *i.e.*, that would direct the determination or decision of

disability." 20 C.F.R. § 404.1527(d); *see* <u>Bell v. Bowen</u>, 796 F.2d 1350, 1353-54 (11th Cir. 1986). Although a claimant may provide a statement containing a treating physician's opinion of his remaining capabilities, the ALJ must evaluate such a statement in light of the other evidence presented and the ALJ must make the ultimate determination of disability. *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527, 404.1545.

## III. Analysis

Plaintiff raises two related challenges to the decision of the ALJ, alleging first that the ALJ reversibly erred in failing to address conflicts between the testimony of the vocational expert at the evidentiary hearing held prior to the remand and the testimony of a different vocational expert at the subsequent hearing. He also contends that the ALJ reversibly erred in issuing a decision that is inconsistent with the testimony of the vocational expert at the last hearing. ECF No. 15 at 1. The Commissioner combines discussion of these issues—contending that substantial evidence supports the decision that Plaintiff is not disabled. ECF No. 16 at 1.

Plaintiff first argues that at the first full hearing held August 27, 2014, prior to the Appeals Council remand, the vocational expert, Leslie Gillespie, testified that even considering that the hypothetical individual is able to lift up to 40 pounds occasionally and 20 pounds frequently with the non-

dominant left hand, full time employment would be precluded if that individual is unable to engage in fine manipulation with the right dominant hand and upper extremity.  ECF No. 15 (citing testimony at Tr. 81-83).

Plaintiff contends that in the 2016 decision rendered after remand, the ALJ found Plaintiff's RFC significantly more limited than the hypothetical RFC posed in the 2014 hearing, including increased weight limitations and a finding of inability to handle, finger or feel with the right hand except to occasionally use the right thumb.  The ALJ found that Plaintiff's severe impairments include right upper extremity muscle wasting and finger contractions of the right hand, left elbow problems, arthroplasty, and cervical spine problems, and concluded that Plaintiff has "substantial restrictions" on his functional capacity.  Tr. 33, 36.  The RFC determined by the ALJ encompassed all the functional limitations supported by the medical and other evidence.  The limitations include lifting and carrying only up to ten pounds occasionally, standing and walking for only up to two hours in a workday, sitting for up to six hours in a workday, no pushing or pulling of arm, leg, or foot controls, no handling, feeling, or fingering with the right hand except for occasional use of the thumb, and only occasional left-hand writing or fine manipulation.  Tr. 36-37.  Dr. Douglas's examination records documented Plaintiff's spasticity in the fingers of the

right hand, apparent deformity of the hand, contraction of the first two digits, the small finger, and the ring finger, and difficulty with wrist extension on the right.  Tr. 36 (citing records at Tr. 482-83).  The ALJ recognized that Dr. Douglas also found weakness of grip and movement of the right hand. *Id.*  The ALJ also cited other medical records documenting muscle weakness and atrophy in the right upper extremity.  Tr. 35 (citing records at Tr. 578-91; 602-06; 607-16).  The state agency medical opinions were given only little weight because evidence at the hearing level indicated the claimant is more limited.  Tr. 36.

Plaintiff argues that based on the testimony of the vocational expert in 2014, this current RFC would have resulted in a finding that Plaintiff was disabled.  Instead, a different vocational expert, Eric Anderson, testified at the October 19, 2016, hearing on remand and concluded that even with the increased limitations on function, and the loss of bilateral dexterity, there are a few jobs available in the national economy, although still available in significant numbers, that an individual such as Plaintiff can perform. Tr. 103-04.

Plaintiff contends that the testimony of the vocational expert in 2014 and the vocational expert in 2016 conflict and, citing Social Security Ruling 00-4p, argues that the ALJ erred in failing to resolve that conflict and

provide a reasonable explanation of how that conflict was resolved.  Social

Security Ruling 00-4p provides, in pertinent part, as follows:

> Resolving Conflicts in Occupational Information
>
> Occupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

Social Security Ruling 00-4p does not require the ALJ to inquire into

or discuss conflicts between testimony of a vocational expert at a first

hearing and testimony by a different vocational expert at a second hearing

after remand.  The conflicts addressed by SSR 00-4p concern conflicts

between the testimony of the vocational expert and the DOT.  Moreover, an

ALJ does not err in failing to discuss vocational expert testimony from an

earlier hearing if the vocational expert at the second hearing provided

"sufficient support" for the opinion given.  *See* Villa v. Colvin, 540 F. App'x

639, 639 (9th Cir. 2013) (unpublished). Plaintiff has not provided any

authority to the contrary. Thus, the issue becomes whether the medical

record and other evidence, including the testimony of the vocational expert

at the 2016 hearing, provide substantial evidence on which the ALJ can

conclude that there are jobs in the national economy, existing in significant

numbers, that the Plaintiff can perform with the revised RFC found to apply

to Plaintiff.

The Appeals Council vacated the ALJ's 2014 decision and remanded,

with directions to the ALJ to further consider the RFC in light of the

objective findings of Dr. Zakiya Douglas. Tr. 150. Those specific findings,

as described in the remand order, were that Plaintiff is "unable to grasp and

manipulate both large and small objects with the first three digits of the right

hand," and that Plaintiff's "thumb functions with opposition is completely

gone." *Id.* The Appeals Council stated that the objective findings indicate

greater manipulative limitations than those determined by the ALJ in the

first decision, which concluded that Plaintiff can "occasionally perform fine

manipulation and handling with the right upper extremity." The Appeals

Council also directed the ALJ, in pertinent part, as follows:

> If warranted by the expanded record, obtain supplemental
> evidence from a vocational expert to clarify the effect of the
> assessed limitations on the claimant's occupational base
> (Social Security Ruling 83-14). The hypothetical questions

should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 151. The ALJ followed these directives in convening an evidentiary hearing and taking testimony from a vocational expert based on a hypothetical which included Plaintiff's greatly increased upper right extremity functional limitations and other functional limitations. The ALJ did ask the vocational expert if his testimony conflicted with the DOT, to which the vocational expert responded that it did not. Tr. 104-05. The ALJ then asked what the vocational expert relied on in his testimony concerning dominant/non-dominant hand use and off-task behavior, which the ALJ stated was not addressed in the DOT. The vocational expert explained that he formed his opinion on those matters based on his education, training, and experience in vocational rehabilitation over the past 28 years. Tr. 105. This colloquy was in accord with the Appeals Council remand and SSR 00-4p.

Convening the hearing and taking the testimony from a vocational

expert was also proper in light of 20 C.F.R. § 404.977, which provides:

> Case Remanded By Appeals Council.
>
> (a) When the Appeals Council may remand a case. The Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision. The Appeals Council may also remand a case in which additional evidence is needed or additional action by the administrative law judge is required.
>
> (b) Action by administrative law judge on remand. The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.

20 C.F.R. § 404.977(a), (b). Taking vocational expert testimony from a

different vocational expert was not inconsistent with the Appeals Council's

remand order or with § 404.977. Moreover, the vocational expert at the

second hearing provided "sufficient support" for his opinion. *See* Villa, 540

F. App'x at 639. The vocational expert testified that his opinions

concerning dominant and non-dominant hand issues was based on his

education, training, and experience in vocational rehabilitation. Tr. 105.

He further testified that the job of information clerk does not typically

require keyboarding.

Accordingly, Plaintiff has not demonstrated that the ALJ reversibly

erred in not discussing and resolving alleged conflicts between the

testimony of the vocational expert at the first hearing and the testimony of a different vocational expert at the hearing held on remand.

It is also significant that Plaintiff's counsel did not object to the qualifications or testimony of the vocational expert, did not question the vocational expert about any conflict that he perceived between the testimonies of the two vocational experts, and did not raise this issue in the post-hearing letter submitted to the ALJ (Tr. 423-26) or in the letter/brief submitted to the Appeals Council (Tr. 427-29). The court in Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), aff'd sub nom, Bechtold v. Barnhart, 31 F. App'x 202 (11th Cir. 2001) (unpublished), held that an argument not raised before the administrative law judge or the Appeals Council is waived. *See also* Withey v. Colvin, No. 1:14-cv-224-MP/GRJ, 2016 WL 1068813, at *5, n.19 (N.D. Fla. Jan. 28, 2016), Report and Recommendation adopted by 2016 WL 1069084 (M.D. Fla. Mar. 17, 2016) (unpublished).

The only questions posed by counsel to the vocational expert concerned whether several of the jobs cited by the expert required computer use. Tr. 105. The vocational expert testified that the job of information clerk does not typically require computer use or keyboarding. *Id.* He also testified on questioning by counsel that the job of call-out

operator would require occasional bilateral use of hands.  Tr. 106.  On

questioning by the ALJ, the vocational expert testified that the job of

surveillance system monitor does not require more than occasional bilateral

manual dexterity.  Tr. 106.

The DOT description of *surveillance system monitor* describes that

job generally as monitoring premises of public transportation terminals to

detect crime using closed circuit television monitors and notifying

authorities by telephone on need for corrective action.  The job calls for

pushing a hold button to maintain the location where the incident is

developing.  The finger dexterity and manual dexterity described in the

DOT for the job of surveillance system monitor is "Level 4 – Lowest 1/3

Excluding Bottom 10%."  Fingering and Handling were described as "Not

Present."  DICOT 379.367-010, 1991 WL 673244.  The DOT description of

*call-out operator* indicates that the job requires use of the telephone, and

copying information onto forms to update credit record or for computer

input.[11]  This job requires Level 3 finger dexterity and occasional handling

and fingering.  DICOT 237.367-014, 1991 WL 6272186.  The job of

*information clerk* is described in the DOT as answering inquiries of persons

---

[11] This DOT description does not indicate that the call-out operator would be the person inputting the information into the computer, but the description does require writing.

entering the establishment, and providing information regarding activities, location of departments or offices; and that the employee "may keep record of questions asked."  It calls for finger dexterity of "Level 5 – Bottom 10% of the population" and Level 4 manual dexterity.  Fingering is described as "Not Present" and handling occurs occasionally.  DICOT 237.367-022, 1991 WL 672188.

The DOT, however, is not the sole source of admissible information on jobs, and an ALJ may rely on expert vocational expert testimony as substantial evidence to support a determination of non-disability.  Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).  The Eleventh Circuit has made clear that this is so even where the vocational expert's testimony conflicts with the DOT.  *Id.*; *see also* Mabrey v. Acting Comm'r of Soc. Sec. Admin., 2018 WL 679390, at *3 (11th Cir. 2018); Leigh v. Comm'r of Social Sec., 496 F. App'x 973, 974-75 (11th Cir. 2012) (unpublished) (same); Hurtado v. Comm'r of Soc. Sec., 425 F. App'x 793, 796 (11th Cir. 2011) (unpublished) (stating "[e]ven assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it 'trump[ed]' any inconsistent provisions of the DOT").

Moreover, "[t]he DOT lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.  A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."  Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).  The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.  <u>Dictionary of Occupational Titles</u>, "Special Notice" (4th ed., rev. 1991).[12]  The DOT descriptions show generally the maximum that is required, not what individual workers are expected to perform on specific jobs; and not all jobs in every category have requirements identical to or as rigorous as those listed in the DOT.  <u>Wheeler v. Apfel</u>, 224 F.3d 891, 897 (8th Cir. 2000). *See also* <u>Gieseke v. Colvin</u>, 770 F.3d 1186, 1189 (8th Cir. 2014); <u>Moore v. Astrue</u>, 623 F.3d 599, 604 (8th Cir. 2010); <u>Hilton v. Comm'r of Soc. Sec.</u>, No. 6:14-cv-1339-Orl-GJK, 2016 WL 561364, at *6 (M.D. Fla. Feb. 12, 2016); *but see* <u>Thomas v. Berryhill</u>, 881 F.3d. 672, 677 (8th Cir. 2018) (holding that the generic character of DOT job descriptions cannot in and of

---

[12] Located at https://www.oalj.dol.gov/LIBDOT.HTM, last visited April 120, 2018. *See also* DOT, Vol. 1, at xiii.

itself resolve a discrepancy between the requirements of the DOT and a vocational expert's testimony that a person with a more limited RFC can do it.)

Plaintiff has the burden of proving that he is disabled and is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. Plaintiff has not demonstrated that he cannot perform even one of the jobs testified to by the vocational expert and found by the ALJ. Plaintiff has not challenged the RFC found by the ALJ or the ALJ's consideration or evaluation of the medical records. His challenge first assumes that the job of call-out operator was eliminated by the ALJ's explanation that "[e]ven if the call-out operator jobs were reduced in number to account [for] computer use, the undersigned still finds that the remaining jobs would constitute a significant number of jobs in the national economy." Tr. 38. The statement does not concede inapplicability of the job, only that the numbers of call-out operator jobs available to Plaintiff might be reduced, although still available in significant numbers.

Plaintiff next challenges the ALJ's inclusion of surveillance system monitor in the jobs that the ALJ concluded Plaintiff could still perform. He contends that the surveillance systems monitor job must be eliminated in light of the vocational expert's testimony that the job would require

occasional bilateral manual dexterity.  ECF No. 15 at 12-13 (citing

testimony at Tr. 106).  Plaintiff suggests that the vocational expert's

testimony that the job of surveillance system monitor "does not require

more than occasional bilateral manual dexterity" as equating to the

conclusion that the job would involve at least occasional use of computers.

ECF No. 15 at 13 (citing Tr. 106).  The testimony, however, was not

directed to computer use.

Plaintiff also challenges the ALJ's inclusion of the job of information

clerk as one of the jobs that Plaintiff could perform.  He cites the vocational

expert's testimony that the job of information clerk required an SVP of 2

and was unskilled, and the ALJ's same erroneous characterization of the

job as SVP of 2, unskilled.  Plaintiff is correct that the job of information

clerk is actually described in the DOT as having an SVP of 4, which would

be semi-skilled work.  *See* Tr. 38.  The vocational expert in this case

testified that his testimony was not in conflict with the DOT, although his

characterization of the SVP and skill level for the DOT description of

information clerk was in error.  Although the vocational expert in this case

did mistakenly state that the SVP level of the job of information clerk was 2

instead of 4, and the ALJ made that same error in the decision in relying on

the testimony of the vocational expert, the error is harmless.  Even if the

jobs of call-out operator and surveillance system monitor are eliminated as

Plaintiff argues, he has not shown by medical records or his own testimony

that he is unable to perform the job of information clerk. An SVP of 4 calls

for semi-skilled work and allows for preparation time of over three months

up to and including six months. 20 C.F.R. § 404.1567(a). Semi-skilled

work is work which needs some skills but does not require doing the more

complex work duties. 20 C.F.R. § 404.1568(b). The ALJ's RFC contains

no mental limitations and Plaintiff has not alleged or proven any.[13]

Further, the erroneous characterization of the job of information clerk

as being an unskilled job having an SVP of 2, rather than a semi-skilled job

having an SVP of 4, is not in direct conflict with the substance of the

testimony of the vocational expert because Plaintiff's skill level and ability to

prepare for and learn the requirements of the job were not part of the

hypothetical question posed to the vocational expert and were not at issue

in the case. The hypothetical RFC, later adopted by the ALJ in the

decision, dealt solely with Plaintiff's functional limitations caused by severe

---

[13] It should be noted that two of Plaintiff past jobs, as described by the vocational expert, fell into the category of SVP 4 and four of them fell into the semi-skilled category. *See* Tr. 101. Nothing in the record indicates that Plaintiff's severe limitations have eliminated his past ability to perform semi-skilled jobs at an SVP 4 level. Further, Plaintiff's right-hand contracture, deformity, decreased muscle tone, and inability to grip were identified in medical records as early as 2007, Tr. 432, but Plaintiff worked as stock clerk, heavy equipment operator, and delivery person in 2011 and 2012, as well as doing floor stripping and waxing in 2010 and 2011. Tr. 93. *See also* Tr. 395.

impairments in his right upper extremity and other parts of his body.
Nothing in the vocational expert's testimony, or the RFC found by the ALJ,
conflicted with the semi-skilled nature of the job and the SVP 4 designation
for the job of information clerk.  Moreover, the DOT job description for
information clerk indicates the lowest level of finger dexterity, the next to
lowest level of manual dexterity, no fingering, and only occasional handling.
The RFC determined by the ALJ is not in conflict with these facets of the
information clerk job description.  Based solely on the attributes and
physical limitations of the hypothetical individual posed to the vocational
expert, the expert testified that such an individual could perform the job of
information clerk.  "The DOT is not comprehensive, and the SSA does not
consider it to be dispositive.  [citing Jones, 190 F.3d at 1230)].  Further, a
VE is 'an expert on the kinds of jobs an individual can perform based on his
or her capacity and impairments.' "  Leigh v. Comm'r of Soc. Sec., 496 F.
App'x 973, 975 (11th Cir. 2012) (unpublished) (quoting Phillips v. Barnhart,
357 F.3d 1232, 1240 (11th Cir. 2004)).

Error, if any, in the ALJ's inclusion of surveillance system monitor and
call-out operator, on the basis that the jobs call for occasional bilateral use
of hands, is harmless.  Harmless error analysis applies in social security
disability cases.  Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983);

Burgin v. Comm'r of Soc. Sec., 420 F. App'x. 901, 903 (11th Cir. 2011)

(unpublished) (applying the harmless error doctrine to social security

cases). The vocational expert testified to, and the ALJ correctly identified,

at least one job existing in substantial numbers in the national economy

that Plaintiff could perform that did not typically require bilateral dexterity.[14]

*See* Hoelck v. Astrue, 261 F. App'x 683, 687 (5th Cir. 2008) (unpublished)

(any error in mentioning other jobs not testified to by the vocational expert

harmless where ALJ correctly identified one job Hoelck could perform);

Bohn v. Astrue, No. 8:12-cv-354-T-TGW, 2013 WL 494059, at *6 (M.D. Fla.

Feb. 7, 2013) (unpublished) ("[E]ven if there had been an error with respect

to [certain jobs], that error would be harmless since [one] job alone

supports the law judge's finding that there are jobs in significant numbers in

the national economy that the plaintiff can perform."); Schultz v. Colvin, No.

8:12-cv-108-T-EAJ, 2013 WL 12167537, at *4 (M.D. Fla. Feb. 28, 2013)

(unpublished) ("Thus, any error is harmless because the ALJ's

determination is still supported by substantial evidence as the VE identified

at least one job that Plaintiff could perform.") (citing McLain v. Astrue, No.

---

[14] The Eleventh Circuit has stressed that because an ALJ's finding as to the existence of a sufficient quantity of jobs is a finding of fact reviewed under the substantial evidence standard, the Court "could not reweigh the evidence or 'substitute our judgment for that of the Secretary.' " Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015) (unpublished) (quoting Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987)).

8:06-cv-2156-T-TBM, 2008 WL 616094, at *7 (M.D. Fla. Mar. 3, 2008));

Tellier v. Colvin, No. 3:15-cv-663-J/JBT, 2016 WL 7438048, at *3 (M.D. Fla.

Feb. 19, 2016) (unpublished) (same).

The ALJ found in step five, based on the medical evidence and the

testimony of the vocational expert, that there are jobs in the national

economy that Plaintiff can perform.  The burden then shifted to Plaintiff to

demonstrate that he cannot perform any of the jobs identified by the ALJ,

which the vocational expert testified he could perform and which exist in

significant numbers in the national economy.  The ALJ's error in misstating

the skill level and SVP rating for information clerk did not affect the

outcome of the proceeding and, thus, is harmless.

Moreover, the RFC determination involved solely Plaintiff's severe

impairments of his upper right extremity, his lack of bilateral dexterity, and

his other musculoskeletal issues.  Plaintiff's functional limitations do not

concern his mental ability or the length of time Plaintiff would need to

devote to learning a job.  And, Plaintiff has not demonstrated that he cannot

perform a job that is listed as semi-skilled or SVP of 4.  Substantial

evidence supports the decision of the ALJ that Plaintiff is not disabled.

Plaintiff has not demonstrated otherwise.

**IV. Conclusion**

Considering the record as a whole, the decision of the Administrative Law Judge is supported by substantial evidence in the record and application of the proper legal standards.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for a period of disability and disability benefits and supplemental security benefits is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment for Defendant.  Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk is also **DIRECTED** to substitute Deputy Commissioner for Operations Nancy A. Berryhill, in her current position, as the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on April 25, 2018.


**s/  Charles A. Stampelos_____**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**